UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-60177
Summary Calendar
_____

Richard Marbel Nortei,

Petitioner,

VERSUS

Immigration and Naturalization Service,

Respondent.

_____

On petition for Review of an order of
the Board of Immigration Appeals
United States Department of Justice
(A28 552 705)
_____

October 3, 1995

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

PER CURIAM[1]:

Richard Marbel Nortei (Nortei) petitioned this court for

review of the decision of Board of Immigration Appeals refusing

to suspend his deportation and refusing to reinstate the

_____

[1]    Local Rule 47.5.1 provides:  "The publication of
opinions that have no precedential value and merely decide
particular cases on the basis of well-settled principles of law
imposes needless expense on the public and burdens on the legal
profession."  Pursuant to that rule, the court has determined
that this opinion should not be published.

Immigration Judge's grant of three months time during which Nortei would have been allowed voluntarily to depart the U.S.

I.

The Immigration and Naturalization Service issued an order to show cause charging Richard Marbel Nortei, a native of Ghana, with deportability from the United States under § 241(a)(1)(B) of the Immigration Act of 1990, 8 U.S.C. § 1251(a)(1)(B), for having remained within the United States longer than permitted by his nonimmigrant visa. **[R. 230-32.]** Nortei conceded deportability at his deportation hearing and was found deportable. **[Id at 233-34, 47.]** Nortei applied for suspension of deportation and, alternatively, voluntary departure. **[Id. at 47, 151-55.]** The Immigration Judge (IJ) denied his request for suspension of deportation, but granted Nortei three months in which to depart voluntarily. **[Id. at 34-44.]** Nortei appealed to the Board of Immigration Appeals (BIA), which affirmed the findings of the IJ, dismissed Nortei's appeal, but granted him only thirty days in which to depart voluntarily. **[Id. at 2-3.]** Nortei timely filed a petition of review with this court.

II.

To be eligible for suspension of deportation, an alien must have been physically present in the United States for a continuous period of at least seven years immediately preceding

the application; be a person of good moral character; and be a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence.  8 U.S.C. § 1254(a)(1); *Hernandez-Cordero v. I.N.S.*, 819 F.2d 558, 560 (5th Cir. 1987) (en banc).   The alien bears the burden of demonstrating eligibility for a suspension of deportation, and even if the requirements are met, the Attorney General retains discretion to refuse to suspend deportation.  *Hernandez-Cordero*, 819 F.2d at 560.

"The BIA, as the Attorney General's delegate, is therefore empowered to decide what constitutes `extreme hardship' and to apply that standard to each individual case." *Id.* at 562.  The Attorney General's discretion to suspend deportation is "unfettered". *Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990).  "Suspension of deportation is a matter of discretion and administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites must be met." *Id.*

This court reviews the BIA's finding regarding extreme hardship only for abuse of discretion. *Id.* at 561-63.  In this highly subjective determination, the BIA has broad, "unfettered" discretion to define extreme hardship narrowly. *Id.*  Thus, "[s]ubstantive review of a no `extreme hardship' determination is

strictly limited. . . ." *Id.* at 562.  Accordingly, this court may find that the BIA abused its discretion only in a case in which "the hardship is uniquely extreme, at or closely approaching the outer limits of the most severe hardship the alien could suffer and so severe that any reasonable person would necessarily conclude that the hardship is extreme." *Id.* at 561, 563.

Although this court will undertake virtually no substantive review of the BIA's finding on the issue of "extreme hardship," it "may still scrutinize the BIA's decision for procedural regularity."  Procedural review is limited to a determination whether the BIA considered the relevant factors establishing extreme hardship.  *Id.* at 563.  The BIA "ordinarily" satisfies "its procedural responsibilities by demonstrating that it has considered all the relevant factors of an `extreme hardship' determination, both individually and collectively." *Id.* However, the BIA has no duty to "write an exegesis on every contention.  What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (quoting *Osuchukwu v. I.N.S.*, 744 F.2d 1136, 1142-43 (5th Cir. 1984)).  This court lacks "the authority to determine the weight, if any, to be afforded each factor." *Id.* (internal quotation omitted).

A.

Nortei argues that the BIA failed to consider and give due weight to the hardship that would be suffered by his step-daughter, U.S. citizen son, and estranged spouse.[2] **[Blue brief 7-9]**  Nortei did not raise before the BIA his contention that the IJ failed to consider hardship faced by his step-daughter. Accordingly, this court lacks jurisdiction to review the issue. *Ozdemir v. I.N.S.*, 46 F.3d 6, 8 (5th Cir. 1995).  We therefore turn to Nortei's remaining contentions.

The BIA noted Nortei's limited contact with his U.S. citizen son and his substantial family ties in Ghana.  **[R. 2]**  The BIA also adopted the IJ's reasoning and analysis, in which the IJ acknowledged Nortei's testimony as to his relationship with his son, but noted the absence of testimony from the mother of his child as to hardships that she or his son would face if Nortei was deported.  *[Id.* **at 41]**  The IJ also noted that Nortei's good physical condition would not prevent him from finding work in Ghana.  Because the BIA adequately considered all the factors relevant to its determination of no "extreme hardship", it did not err in its procedural responsibilities.

---

[2]  The IJ found that Nortei had maintained a continuous physical presence in the United States for seven years and was of good moral character.  **[R. 33-43]**  These issues are not in dispute.

B.

Nortei argues that the BIA did not give sufficient weight to the hardship that would be suffered by his estranged permanent-resident spouse and his U.S. family if he were deported. **[Blue brief, 7-8]** He contends that satisfactory employment would elude him in his native Ghana and foreclose his ability to continue to support both his family in the U.S. and his two children who reside in Ghana. **[Blue brief, 8-9]** He argues that the financial and emotional hardship caused by his deportation would constitute "extreme hardship" to himself and his family. **[Id. at 9]**

Nortei has not demonstrated that the BIA abused its discretion when it found that his deportation would not result in "extreme hardship". Mere economic and social hardship, which any alien would experience upon return to his native country, is insufficient to establish that the hardship is "uniquely extreme." *See Vargas v. I.N.S.*, 826 F.2d 1394, 1397 (5th Cir. 1987); *Hernandez-Cordero*, 819 F.2d at 563-64; *Youssefinia v. I.N.S.*, 784 F.2d 1254, 1262 (5th Cir. 1986) (economic and social difficulties alien and United States-born child might experience as a result of Iran's then-current cultural upheaval do not amount to extreme hardship). Nortei and his wife have lived apart since 1989. **[R. 60, 75]** Although he has voluntarily contributed $200 each month to support his child, he offers no testimony from his wife as to the hardship his deportation would

cause her.  **[Id.]**  He has limited contact with his son, who he visits for about 24 hours every other weekend.  **[Id. at 60-61, 88-89]**  Nortei has significant family relations in Ghana:  his parents, his brothers and sisters, and two children.  **[Id. at 61-62, 64-65]**  Considering these examples of evidence that supported the BIA's conclusion, this court finds no abuse of the BIA's discretion in its refusal to suspend Nortei's deportation based upon the conclusion that deportation would not result in "extreme hardship."

C.

Lastly, Nortei contends that the BIA's grant of only thirty days voluntary departure, rather than, as Nortei requested in the alternative of suspension of deportation, reinstatement of the three months granted by the IJ, was arbitrary, capricious, and an abuse of discretion.  **[Blue brief, 17]**  He also argues that the BIA's failure to explain its denial of his request for three-months voluntary departure was an abuse of its discretion.  **[Id.]**

While it is true that the BIA offered no explanation for its grant of thirty days rather than three months for Nortei's voluntary departure, it is true as well that Nortei has succeeded in remaining in the U.S. nearly three years after the IJ granted him three-months voluntary departure.  **[R. 44]**  Moreover, Nortei

offered the BIA no reasons explaining why he requires three months in order to depart voluntarily.  Considering these circumstances, the  BIA's action did not constitute an abuse of discretion.

## III.

For the foregoing reasons, the decision of the Board of Immigration Appeals is

**AFFIRMED.**